## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

JESSICA CORVALAN, an individual,

      Plaintiff,

vs.

MONZON AUTO SALES, INC.,
a Florida corporation, and DANILO
MONZON LEON, an individual,

      Defendants.

_____/

### COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, Jessica Corvalan, an individual, sues Defendants, Monzon Auto Sales, Inc.,

a Florida corporation, and Danilo  Monzon Leon, an individual, and alleges:

### GENERAL ALLEGATIONS

### SYNOPSIS OF PROCEEDING

1.      The instant action involves claims under the Federal Odometer Act, 49 U.S.C.

§32701 ("Odometer Act"), which prohibits the disconnection, resetting or alteration of

odometers with the intent to change the number of miles indicated thereon.  The law requires that

a written disclosure of the mileage registered on the odometer be provided by the seller to the

purchaser on the title to the vehicle when the ownership of the vehicle is transferred.  If the

odometer mileage is incorrect, the law requires a statement to that effect to be furnished on the

title to the buyer.

2.      Odometer tampering is a significant criminal and consumer fraud issue in the United States.  According to the National Highway Traffic Safety Administration ("NHTSA"), over 450,000 vehicles sold each year have false odometer readings, causing over One Billion Dollars ($1,000,000,000.00) of loss to American car buyers.

3.      In South Florida, automobile dealerships are routinely rolling back the odometers of vehicles in order to purloin profit.  In many instances, dealerships focus on rolling back the odometers of so-called "working people" cars — such as Nissans and Toyotas. *See*, e.g., *"Car Buyer Cries Fraud After Discovering Odometer Has Been Rolled Back,"* Miami Herald, April 8, 2013 [article concerning aggrieved car purchaser who purchased a vehicle with 56,447 miles from dealership when the actual mileage for the vehicle was 187,677].

### *ALLEGATIONS AS TO PARTIES*

4.      At all times material hereto, Plaintiff, Jessica Corvalan ("Ms. Corvalan"), was *sui juris* and a resident of Miami-Dade County, Florida.

5.      At all times material hereto, Defendant, Monzon Auto Sales, Inc. ("Monzon Auto Sales" or "Dealership") was a Florida corporation, doing business at 4245 E. 8th Avenue, Hialeah, Florida 33013.

6.      At all times material hereto, Monzon Auto Sales was a "dealer" as said term is defined under Florida Statute §320.77(1)(a).

7.      At all times material hereto, the Dealership was in the business of selling and financing used motor vehicles to the public-at-large in Miami-Dade County, Florida.

8.      At all times material hereto, Defendant, Danilo Monzon Leon ("Mr. Monzon"), was *sui juris* and a resident of Miami-Dade County, Florida.

-2-

9.      At all times material hereto, Mr. Monzon was a "control person" of Monzon Auto Sales as said term is defined under Florida Statute §520.02(4).

10.     At all times material hereto, Mr. Monzon was the president, manager and control person of Monzon Auto Sales, and maintained complete authority and control over Monzon Auto Sales to the extent that Monzon Auto Sales was the alter ego and mere instrumentality of Mr. Monzon.

11.     As detailed below, Mr. Monzon either directly participated in the wrongful conduct described below or alternatively ratified such activity upon being informed of same.

## FACTUAL ALLEGATIONS

### *1. Purchase and Financing of Vehicle*

12.     On or about June 3, 2013, Ms. Corvalan visited the place of business of the Dealership for the purpose of selecting a used motor vehicle to be used for her personal, family and household purposes.

13.     After viewing several vehicles at the Dealership, Ms. Corvalan selected a used 2004 Volvo S40, VIN: YV1MS382X42014284 ("Volvo").

14.     At the time Ms. Corvalan selected the Volvo, Defendants both in writing and orally affirmatively represented to Ms. Corvalan that the odometer reading for the Volvo was 89,729 miles ("Mileage Representation").

15.     In the belief that she was purchasing reliable transportation at a reasonable value, Ms. Corvalan executed and delivered to Defendants the following documents (collectively "Purchase and Finance Documents"):

- a document entitled "Bill of Sale," known more commonly in the

automobile industry as a "buyers' order" or "retail buyer's order"

("Buyer's Order"); and

- a document entitled "Retail Installment Contract and Security Agreement"

("RISC").

16. A true and correct copy of the Buyer's Order and RISC (with redacted personal information of Ms. Corvalan) are attached hereto and incorporated herein by reference as Exhibits "A" and "B" respectively.

17. Pursuant to the RISC, Ms. Corvalan agreed to pay the sum of Nine Thousand Four Hundred Eighty-Six and 72/100ths Dollars ($9,486.72), exclusive of interest, as and for the Purchase Price for the Volvo.

18. After consummation of the transaction to purchase and finance the Volvo, the Dealership sold or transferred the RISC to a third party, Westlake Financial Services ("Westlake Finance" or "Finance Company"), for unknown consideration.

19. Pursuant to the RISC and Buyer's Order, Defendants represented to both Ms. Corvalan and Westlake Financial that the odometer reading for the Volvo was **89,729** miles.

### 2. Discovery of Mileage Rollback

20. Upon conclusion of the transaction to purchase and finance the Volvo, Ms. Corvalan left the Dealership with the Volvo in the happy belief that she acquired reliable transportation for her personal and household purposes.

21. Several months after purchasing the Volvo, Ms. Corvalan began to consider purchasing another vehicle using the Volvo as a trade in vehicle. Towards this end, in September, 2013, Ms. Corvalan brought the Volvo to a local dealership for the purpose of having the Volvo

appraised.

22.     Much to the utter shock of Ms. Corvalan, after the local dealership pulled a
CarFax report for the Volvo,  Ms. Corvalan learned that the Volvo had substantially greater
mileage than that which was represented to Ms. Corvalan by Defendants.  Among other things,
Ms. Corvalan learned that the reported mileage for the Volvo prior to its purchase by the
Dealership was 128,000 miles as of April 27, 2013.

23.     As part of her due diligence in the preparation of the instant claim, Ms. Corvalan
through counsel obtained a copy of the title history ("Title History") for the Volvo from the State
of Florida, Department of Highway Safety and Motor Vehicles ("DMV"), including Certificate of
Title No. 90932490 with an issue date of April 27, 2013 ("Transfer Title").

24.     True and correct copies of the Title History and Transfer Title are attached hereto
as Exhibits "C" and "D" respectively.

25.     According to the Title History for the Volvo, the Dealership acquired the Volvo
on June 3, 2013 from "Maikel Munoz Seisdedos."

26.     According to the Transfer Title , the assignment from the prior owner to the
Dealership was signed by Mr. Monzon.

27.     The assignment from the Dealership to Ms. Corvalan was signed by Mr. Monzon.

28.     At the time of the acquisition of the Volvo by the Dealership, the odometer
reading for the Volvo was in excess of **128,000 miles.**  In particular, the prior owner of the Volvo
had filed an application for duplicate or lost title on **April 27, 2013** to the DMV which reported
that the "actual mileage" of the Volvo was 128,000 miles.

29.     The odometer for the Volvo was rolled back to **89,729** miles — or over 33,000

miles — a few days after the purchase of the Volvo by Defendants.

30.     In reviewing the Title History for the Volvo, Ms. Corvalan learned for the first

time that the Dealership had also submitted to the DMV a document entitled "Application for

Certificate of Title With/Without Registration" ("Title Application") with respect to the transfer

of the Volvo from the Dealership to Ms. Corvalan.

31.     A copy of the Title Application is attached hereto and incorporated by reference as

Exhibit "E."

32.     The Title Application appears to have been signed by Ms. Corvalan.

33.     Pursuant to the Title Application, the Dealership was required to provide an

odometer declaration in the following form:

**WARNING: Federal and State law requires that you state the mileage in connection with an application for a Certificate of Title. Failure to complete or providing a false statement may result in fines or imprisonment.**

WE STATE THAT THIS ☐ 5 OR ☐ 6 DIGIT ODOMETER NOW READS _____ . xx (NO TENTHS) MILES, DATE READ _____ AND I/WE HEREBY CERTIFY THAT TO THE BEST OF MY/OUR KNOWLEDGE THE ODOMETER READING:

☐ 1. REFLECTS ACTUAL MILEAGE. ☐ 2. IS IN EXCESS OF ITS MECHANICAL LIMITS. ☐ 3. IS NOT THE ACTUAL MILEAGE.

34.     When completing the Odometer Declaration for the Title Application, the

Dealership inserted into the Odometer Declaration that the mileage reading was 89,729 miles as

of June 3, 2013.

35.     Upon information and belief, after the execution of the Title Application by Ms.

Corvalan, Defendants inserted a handwritten "X" into the box which designated "is not the actual

mileage" in the Odometer Declaration. The Defendants purposefully concealed from Ms.

Corvalan that the Title Application would be submitted to the DMV with a "not actual mileage"

designation in the Odometer Declaration.

36.     The Odometer Declaration was not signed by the Dealership as required by the Odometer Act. Rather, it appears that Defendants made Ms. Corvalan sign at the place designated for the Dealership.

### 3.   Initial Title Fraud by Dealership

37.     In order to facilitate and conceal the odometer fraud, Defendants forged the signature of Ms. Corvalan on the Transfer Title.

38.     Defendants concealed that the actual mileage of the Volvo was not as shown on the odometer or as represented through completion of the Odometer Declaration after the Title Application had been apparently signed by Ms. Corvalan and by forging the signature of Ms. Corvalan to the Transfer Title.  By this artifice and scheme, the Dealership could feign compliance with the requirements of the federal and state odometer acts in the event the DMV or Ms. Corvalan discovered the actual mileage and misconduct of the Defendants at a later time.

### 4.   Report of Misconduct by Ms. Corvalan to Finance Company

39.     Subsequent to the discovery of the mileage rollback by Defendants, Ms. Corvalan contacted the Finance Company with respect to her discovery of odometer tampering by Defendants.

40.     At the request of Westlake Finance, Ms. Corvalan forwarded to Westlake Finance a copy of the CarFax report that she had obtained from the local dealership.

41.     In response to the complaint by Ms. Corvalan, Westlake Finance informed Ms. Corvalan that Westlake Finance would "investigate" the conduct of the Dealership and would inform Ms. Corvalan as to its findings.

-7-

42.     Apparently as a result of the complaint by Ms. Corvalan, on or about February 19, 2014, Westlake Finance filed or caused to be filed a Lien Satisfaction with the DMV ("Lien Satisfaction").

43.     A true and correct copy of the Lien Satisfaction is attached hereto and incorporated by reference as Exhibit "F."

44.     As a result of the recording of the Lien Satisfaction with the DMV, the lien interest in the Volvo was extinguished by Westlake Finance.

### 5.  *Wrongful Repossession of Volvo*

45.     In retaliation for the report by Ms. Corvalan to Westlake Finance that the Dealership had committed misconduct, the Dealership repossessed the Volvo from the residence of Ms. Corvalan without warning.

46.     At the time of the repossession of the Volvo by the Dealership, Ms. Corvalan was current in all of her obligations under the RISC.

47.     In shock that the Dealership would effectively steal her automobile, Ms. Corvalan contacted Defendants to learn the reason, if any, for the repossession of the Volvo.

47.     In response to Ms. Corvalan's request for an explanation, Mr. Monzon informed Ms. Corvalan that "you brought this upon yourself."

### 6.  *Second Title Fraud by Dealership*

48.     After the repossession of the Volvo by Defendants, Defendants sold the Volvo to a third party: Sindia Morales ("Ms. Morales") on March 20, 2014.

49.     In order to effectuate the transfer of the Volvo to Ms. Morales, Defendants forged the signature of Ms. Corvalan to the Certificate of Title for the Volvo ("Morales Transfer Title").

50.     A true and correct copy of the Morales Transfer Title is attached hereto and incorporated herein by reference as Exhibit "G."

51.     Pursuant to the Morales Transfer Title, Defendants falsely represented to the DMV that Mr. Corvalan had transferred and assigned her interest in the Volvo to the Dealership on March 15, 2014, when in fact Ms. Corvalan did not.

## COUNT I - ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT

52.     This is an action for violation of the Federal Odometer Act, also known as the "Federal Motor Vehicle Information and Cost Savings Act," 49 U.S.C. §32710, *et sequi,* ("Odometer Act" or "Act"), and the regulations promulgated thereunder.

53.     Ms. Corvalan realleges and reaffirms the allegations contained in Paragraphs 1 through 51 above as if set forth hereat in full.

54.     At all times material hereto, Monzon Auto Sales was a "dealer" as said term is defined under 49 U.S.C. §32702(2).

55.     Pursuant to 49 U.S.C. §32703, a person may not *inter alia*:

- disconnect, reset, alter or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer;

- with intent to defraud, operate a motor vehicle on a street, road or highway if the person knows that the odometer of the vehicle is disconnected or not operating; or

- conspire to violate 49 U.S.C. §32703, §32704 or §32705 of the Act.

56.     Pursuant to 49 U.S.C. §32704, a person may service, repair or replace the

odometer of a motor vehicle if the mileage registered by the odometer remains the same as before the service, repair or replacement.  If the mileage registered cannot remain the same -

      (1) a person shall adjust the odometer to read zero; and

      (2) the owner of the vehicle or agent of the owner shall attach written notice to the left door frame of the vehicle specifying the mileage before the service, repair or replacement and the date of service of service, repair or replacement.

57.     By information and belief, the odometer of the Volvo was either tampered with or was replaced without compliance under the Act.

58.     Pursuant to 49 U.S.C. §32705, a motor vehicle the ownership of which is transferred may not be licensed for use in the state unless the transferee, in submitting an application to the state upon which the license will be issued, includes with the application the transferor's title and, if that title contains a blank space, must disclose the mileage at the time of a future transfer, a statement, signed and dated by the transferor under the Odometer Act.

59.     Pursuant to 49 U.S.C. §32705(2)(A), a transferee may use a written power of attorney for mileage disclosure required under the Odometer Act provided that said disclosure in compliance with the Regulations and state law.

60.     A power of attorney may not be used to allow an individual entity to sign as both buyer and seller in confirming a federal odometer reading. If a power of attorney is used, an attorney in fact must sign in the name of the attorney in fact.

61.     Monzon Auto Sales failed to provide Ms. Corvalan with the actual title certificate to transfer title for her examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

62.     Monzon Auto Sales has violated the Act in that Monzon Auto Sales made a false statement to a transferee in violation of 49 U.S.C. §32705(a) and 49 C.F.R. §580.4. *See, Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318 (11th Cir. 2005).

63.     As a direct and proximate result of the above-described actions, Monzon Auto Sales violated the Act with the intent to defraud.

64.     As a result of the violation of the Act, Monzon Auto Sales is liable to Ms. Corvalan in an amount equal to three times actual damages or $10,000.00, whichever is greater, plus attorney's fees and costs pursuant to 49 U.S.C. §32710.

65.     Ms. Corvalan has retained the undersigned attorney and is obligated to pay said attorney a reasonable fee for his services.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment against Defendants, Monzon Auto Sales, Inc., a Florida corporation, and Danilo Monzon Leon, an individual, for statutory and actual damages, together with attorney's fees and costs pursuant to 49 U.S.C. §32710.

## COUNT II - ACTION FOR VIOLATION OF THE
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

66.     This is an action for violation of Florida Statute §501.201, *et sequi,* known more commonly as the "Florida Deceptive and Unfair Trade Practices Act" (the "DUTPA") brought herein pursuant to the pendant jurisdiction of the Court.

67.     Ms. Corvalan realleges and reaffirms the allegations contained in Paragraphs 1 through 51 above as if set forth hereat in full.

### *General Allegations as to DUTPA*

-11-

68.    At all times material hereto, Ms. Corvalan was an "interested party or person" as said term is defined under Florida Statute §501.203(6).

69.    By virtue of the acts described above, Defendants were engaged in "trade or commerce" as said term is defined under Florida Statute §501.203(8).

### *Violation of the Florida Motor Vehicle Dealer License Act*

70.    During the course of the sale and financing of the Volvo, Defendants violated the requirements of Florida Statutes Chapter 320, known more commonly as the "Florida Motor Vehicle Licenses Act," in the following respects:

A.    By misrepresenting or making false, deceptive or
misleading statements with regard to the sale of the Volvo
in violation of Florida Statute §320.27(b)3; and

B.    By perpetrating any fraud upon Ms. Corvalan in
connection with the sale of the Volvo in violation of
Florida Statute §320.27(9)(b)13.

71.    The violation of the Florida Motor Vehicle Dealer License Act is a per se violation of the DUTPA pursuant to Florida Statute §501.211(3)(c).

### *Violation of Florida Title Certificate Act*

72.    During the course of the sale and financing of the Volvo, Defendants violated the requirements of Florida Statute §319, known more commonly as the "Florida Title Certificate Act," by signing an odometer disclosure statement on the Transfer Title as both the transferor and the transferee for the same transaction in violation of Florida Statute §319.225(5).

73.    The violation of the Florida Title Certificate Act is a *per se* violation of the

DUTPA under Florida Statute §501.211(3)(c)

### *Violation of DUTPA as to Vehicle*

74.     At all times material hereto, Ms. Corvalan was a "customer" as said term is defined under Florida Statute §501.975(1).

75.     At all times material hereto, Monzon Auto Sales was a "dealer" as said term is defined under Florida Statute §501.975(2).

76.     At all times material hereto, the Volvo was a "vehicle" as defined under Florida Statute §501.975(5).

77.     During the course of the sale of the Volvo, Defendants violated the requirements of the DUTPA representing the previous usage or status of the Volvo to be something that it was not, or made usage or status representations unless Defendants had correct information regarding the history of the Volvo to support the representation, in contravention of Florida Statute §501.976(3).

*              *              *

78.     As more particularly described above, Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute §501.204(1).

79.     Pursuant to Florida Statute §501.211, Ms. Corvalan is entitled to obtain a declaratory judgment that the acts and practices of Defendants under the DUTPA and to enjoin Defendants from further violations of the DUTPA.

80.     It is in the interest of protection of consumers that the Defendants be prohibited and proscribed from further violations of the DUTPA as described above.

81.    As a direct and proximate result of the violation of the DUTPA, Ms. Corvalan has been damaged and is an aggrieved person.

82.    Ms. Corvalan has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment against Defendants, Monzon Auto Sales, Inc., a Florida corporation, and Danilo Monzon Leon, an individual, for:

      A.    Compensatory damages;

      B.    Declaratory relief against Defendants adjudicating that the actions of Defendants described above constitute violations of the DUTPA;

      C.    Injunctive relief against Defendants proscribing Defendants from further violations of the DUTPA as described herein; and

      D.    Attorney's fees and court costs pursuant to Florida Statute §501.2105.

## COUNT III - ACTION FOR FRAUD

83.    This is an action for fraud brought herein pursuant to the pendant jurisdiction of the Court.

84.    Ms. Corvalan realleges and reaffirms the allegations contained in Paragraph 1 through 51 above as if set forth hereat in full.

85.    As more fully described above, Defendants misrepresented material facts concerning the sale of the Volvo.

86.    Defendants knew that the representations set forth above were false or made such representations recklessly, and Defendants had no reasonable grounds for believing those

-14-

representations to be true.

87.     Defendants knew that the above representations and omissions concerning the purchase of the Volvo were material and important.

88.     Defendants intended to deceive Ms. Corvalan, who relied upon the misrepresentations and omission to her detriment.

89.     As a direct and proximate result of the fraud and non-disclosures by Defendants, the actual and economic damages of Ms. Corvalan include but are not limited the diminution in value of the Volvo as a result of its having an inaccurate odometer.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment for damages against Defendants, Monzon Auto Sales, Inc., a Florida corporation, and Danilo Monzon Leon, an individual, together with interest and costs.

## COUNT IV - ACTION FOR NEGLIGENT MISREPRESENTATION

90.     This is an action for negligent misrepresentation brought herein pursuant to the pendant jurisdiction of the Court.

91.     Ms. Corvalan realleges and reaffirms the allegations contained in Paragraph 1 through 51 above as if set forth hereat in full.

92.     As more particularly described above, Defendants misrepresented and failed to disclose material facts concerning the sale of the Volvo.

93.     Defendants believed the above statements to be true and to be complete but which were in fact false and incomplete.

94.     Defendants were negligent in making the statements and omissions concerning the sale of the Volvo. Defendants should have known that the statements were false.

95.     Defendants, in making the statements concerning the sale of the Volvo, intended that Ms. Corvalan rely upon said statements.

96.     As a direct and proximate result of the negligent misrepresentation of the Defendants, the actual and economic damages of Ms. Corvalan include but are not limited to the diminution in value of the Volvo as a result of its having an inaccurate odometer.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment for damages against Defendants, Monzon Auto Sales, Inc., a Florida corporation, and Danilo Monzon Leon, an individual, together with interest and costs.

## COUNT V- ACTION FOR FRAUDULENT INDUCEMENT

97.     This is an action for fraudulent inducement brought herein pursuant to the pendant jurisdiction of the Court.

98.     Ms. Corvalan realleges and reaffirms the allegations contained in Paragraph 1 through 51 above as if set forth hereat in full.

99.     As more particularly described above, Defendants induced Ms. Corvalan into signing the Buyer's Order by knowingly making misrepresentations of material fact and omitting material facts with the intent that Ms. Corvalan rely on them to her detriment.

100.    Defendants' misrepresentations of material fact and omissions of material fact were made and omitted with the intent that Ms. Corvalan rely on them, or be deceived by them to her detriment.

101.    Ms. Corvalan justifiably relied upon the misrepresentations to her detriment and further, had Ms. Corvalan been advised of the truth, Ms. Corvalan would not have entered into the Buyer's Order.

102.    As a result of the fraud and deceit by Defendants, the actual and economic damages of Ms. Corvalan include but are not limited to the  the diminution in value of the Volvo as a result of its having an inaccurate odometer.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment for damages against Defendants, Monzon Auto Sales, Inc., a Florida corporation, and Monzon Auto Sales, Inc., an individual, together with interest, costs and attorney's fees pursuant to Florida Statute §57.105(2).

**COUNT VI- ACTION FOR BREACH OF EXPRESS WARRANTY**
***(AS TO DEALERSHIP ONLY)***

103.    This is an action for breach of express warranty brought herein pursuant to the pendant jurisdiction of the Court.

104.    Ms. Corvalan realleges and reaffirms the allegations contained in Paragraph 1 through 51 above as if set forth hereat in full.

105.    From the various statements by Monzon Auto Sales, including the Mileage Representation, Monzon Auto Sales made an express warranty pursuant to Section 2-313 of the Uniform Commercial Code ("UCC") by both affirmation of fact or promise and by description of goods ("Express Mileage Warranty").

106.    As evidenced by the title records and other evidence, Monzon Auto Sales has breached the Express Mileage Warranty.

107.    As a direct and proximate result of the breach of the Express Mileage Warranty, Ms. Corvalan has been damaged.  The damages of Ms. Corvalan include but are not necessarily limited to the diminution in value of the Volvo as a result of it having an inaccurate odometer.

-17-

108.    Ms. Corvalan has performed all conditions precedent to the filing of the instant action.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment for damages against Defendant,  Monzon Auto Sales, Inc., a Florida corporation, together with interest and costs.

## COUNT VII- ACTION FOR BREACH OF
## UNIFORM COMMERCIAL CODE
### *(AS TO DEALERSHIP ONLY)*

109.    This is an action for violation of Article 9, Part VI, Uniform Commercial Code ("UCC"), ) brought herein pursuant to the pendant jurisdiction of the Court.

110.    Ms. Corvalan realleges and reaffirms the allegations contained in Paragraphs 1 through 51 above as if set forth hereat in full.

111.    At all times material hereto, the Volvo was a "consumer good" as said term is defined under the UCC.

112.    Pursuant to Florida Statute §679.610, every aspect of the disposition of collateral, including the method, manner, time, place and other terms must be commercially reasonable.

113.    As more particularly described above, Monzon Auto Sales has violated the requirements of Florida Statute §679.609 by taking possession of the Volvo in the absence of a default.

114.    Monzon Auto Sales did not act in a commercially reasonable manner within the meaning of Article 9, Part VI of the UCC with respect to the repossession of the Volvo.

115.    Monzon Auto Sales failed to provide Ms. Corvalan with the mandated notification of disposition of collateral pursuant to Florida Statute §679.614.

-18-

116.    Ms. Corvalan paid more than sixty percent (60%) of the cash price for the Volvo under the RISC at the time of the repossession of the Volvo by Monzon Auto Sales.

117.    Monzon Auto Sales did not dispose of the Volvo within ninety (90) days after taking possession of the Volvo.

118.    Monzon Auto Sales has failed to comply with the requirements of Florida Statute §679.620(5).

119.    As a direct and proximate result of the violation of the default procedures of the UCC by Monzon Auto Sales, Ms. Corvalan has the right to recover damages for any loss caused by the failure of Monzon Auto Sales to comply with the provisions of the UCC, in any event in an amount not less than the credit service charge plus ten percent (10%) of the principal amount of the debt or the time-price differential plus ten percent (10% ) of the cash price as set forth under Florida Statute §679.625(3)(b).

120.    As a result of the violation of the UCC by Monzon Auto Sales, Ms. Corvalan has been damaged. The damages of Ms. Corvalan include the following:

        A.    The value of the Volvo; and

        B.    The cost of obtaining alternative transportation.

121.    Pursuant to the terms and provisions of the RISC, Monzon Auto Sales is entitled to recover attorney's fees and court costs in the event of an action to enforce the rights of Monzon Auto Sales thereunder.

122.    Ms. Corvalan has employed the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment in her favor

against Defendant, Monzon Auto Sales, Inc., a Florida corporation, for damages, together with interest, court costs and attorney's fees pursuant to Florida Statute Section 57.105(7).

## COUNT VIII - ACTION FOR CONVERSION

123.    This is an action for conversion brought herein pursuant to the pendant jurisdiction of the Court.

124.    Ms. Corvalan realleges and reaffirms the allegations contained in Paragraphs 1 through 51 above as if set forth hereat in full.

125.    The taking and selling of the Volvo was without legal cause or justification and constituted a conversion of the property of Ms. Corvalan.

126.    As a direct and proximate result of the conversion of the Volvo, Ms. Corvalan has been damaged. The damages of Ms. Corvalan include the following:

    A.    The value of the Volvo;

    B.    The cost of obtaining alternative transportation; and

    C.    Mental pain and shock, suffering, aggravation, humiliation and embarrassment.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment for damages against Defendants, Monzon Auto Sales, Inc., a Florida corporation, and Danilo Monzon Leon, an individual, together with interest and costs.

## COUNT IX - ACTION FOR TRESPASS TO CHATTELS

127.    This is an action for trespass to chattels brought herein pursuant to the pendant jurisdiction of the Court.

128.    Ms. Corvalan realleges and reaffirms the allegations contained in Paragraphs 1

-20-

through 51 above as if set forth hereat in full.

129.    The taking of the Volvo was without legal cause or justification and was contrary to the property rights of Ms. Corvalan.

130.    As a direct and proximate result of the trespass to the chattels of Ms. Corvalan, Ms. Corvalan has been damaged.  The damages of Ms. Corvalan include the following:

A.      The cost of obtaining alternative rental transportation; and

B.      Mental pain and shock, suffering, aggravation, humiliation and embarrassment.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment for damages against Defendants,  Monzon Auto Sales, Inc., a Florida corporation, and Danilo Monzon Leon, an individual, together with interest and costs.

## COUNT X - ACTION FOR VIOLATION OF THE
## FLORIDA CONSUMER COLLECTION PRACTICES ACT

131.    This is an action for damages for violation of Florida Statute Chapter 559.55, *et sequi*, known more commonly as the Florida Consumer Collection Practices Acts ("FCCPA"), brought herein pursuant to the pendant jurisdiction of the Court.

132.    Ms. Corvalan realleges and reaffirms the allegations contained in Paragraphs 1 through 51 above as if set forth hereat in full.

133.    At all times material hereto, the monies purportedly owed under the RISC constituted a "debt" or "consumer debt" as said term is defined under Florida Statute §559.55(1).

134.    At all times material hereto, Ms. Corvalan was a "debtor" or "consumer debtor" as said terms are defined under Florida Statute §559.55(2).

135.    At all times material hereto, Monzon Auto Sales was a "creditor" as said term is defined under Florida Statute §559.55(3).

-21-

136.   As more particularly described above, the Defendants have violated the FCCPA in that the Defendants have:

(a)   engaged in conduct which reasonably can be expected to abuse or harass Ms. Corvalan in contravention of Florida Statute §559.72(7); and

(b)   claimed, attempted or threatened to enforce a debt that is not legitimate or asserted the existence of a legal right when such person knows the right does not exist in contravention of Florida Statutes §559.72(9).

137.   As a direct and proximate result of the violation of the FCCPA by the Defendants, Ms. Corvalan has been damaged. The damages of Ms. Corvalan include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment.

138.   Ms. Corvalan has retained the undersigned law firm to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

139.   Pursuant to Florida Statute §559.77, Ms. Corvalan is entitled to recover actual damages together with statutory damages of $1,000.00, along with reasonable attorney's fees and court costs.

140.   Pursuant to Florida Statute §559.77, the Court may award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the Defendants from further violations of the Act.

WHEREFORE, Plaintiff, Jessica Corvalan, an individual, demands judgment for damages against Defendants, Monzon Auto Sales, Inc., a Florida corporation, and Danilo Monzon Leon, an individual, for compensatory, punitive and statutory damages, both jointly and severally, together with interest, costs and attorneys fees pursuant to Florida Statute §559.77.

-22-

## DEMAND FOR JURY TRIAL

Plaintiff, Jessica Corvalan, pursuant to Rule 38(b), Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

LAW OFFICE OF ROBERT W. MURPHY

Robert W. Murphy
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, FL 33316
(954) 763-8660 Telephone
(954) 763-8607 Fax
Email: rphyu@aol.com and
rwmurphy@murphylawfirm.com